WARFIELD et al. v. WESTERN & A. R. CO.

(Circuit Court, N. D. Georgia. February 7, 1911.)

RAILROADS (§ 138*)—TRAFFIC CONTRACTS—CONSTRUCTION.

By a contract between two railroad companies, the first granted to the second, a belt line company, the right to use its terminal tracks and station at Atlanta, and agreed to store and clean its passenger engines and coaches and those used by it belonging to a third railroad company named, while laying over at Atlanta, and to charge actual cost for switching, hostling, etc., said engines and coaches. *Held*, that such contract did not embrace Pullman cars, owned by the Pullman Company, although brought to the station by the second party in a train of the third railroad company, and that a right of action to recover damages for an injury to such a car, while being switched with the remainder of the train by the first party, was outside of the contract, and either sounded in tort or was based on an implied contract.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 436-439; Dec. Dig. § 138.*]

In Equity. Ancillary suit by S. Davies Warfield, R. Lancaster Williams, and E. C. Duncan, receivers of the Seaboard Air Line, against the Western & Atlantic Railroad Company. On demurrer to bill. Demurrer sustained.

Brown & Randolph and Robert S. Parker, for complainants.

Tye, Peeples & Jordan, for defendant.

NEWMAN, District Judge. This is a bill filed by the receivers of the Seaboard Air Line, dependent and ancillary to the consolidated cause of Seaboard Air Line Railway, complainant, against the Continental Trust Company, as trustee under the first mortgage made by the Seaboard Air Line Railway, defendant, and the Continental Trust Company, as trustee under the first mortgage made by the Seaboard Air Line Railway, complainant, against Seaboard Air Line Railway, the New York Trust Company and Willard V. King, as trustees, and Morton Trust Company and James I. Burke, as trustees, defendants.

The bill sets out the different companies and corporations embraced in the lines which went into the hands of receivers and the appointment of receivers. The whole of the allegations and statements with reference to the different corporations I understand to be for the purpose of showing that the receivers represented the corporations entering into the contract hereinafter referred to. All this I deem immaterial in the view taken by the court of this case.

Then come the following allegations:

"Your orators are informed and believe, and so charge, that on or about the 1st day of October, 1892, the Seaboard Air Line Belt Railroad Company, one of the corporations hereinbefore referred to, did make and enter into a contract with the defendant to this dependent and ancillary bill, to wit, the Nashville, Chattanooga & St. Louis Railway, lessee of the Western & Atlantic Railroad Company, and by virtue of said lease and under the laws of the state of Georgia, a body politic and corporate under the name and style of Western & Atlantic Railroad Company, in which said agreement it was provided, among other things, that, whereas, the said Seaboard Air Line Belt Railroad Company was authorized by its charter to construct a railroad

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from a point at or near North Decatur, on the line of the Georgia, Carolina & Northern Railway, to a point at or near Howell's, a station on said Western & Atlantic Railroad, in consideration of certain sums of money in said agreement named and set out, the said Seaboard Air Line Belt Railroad Company should have the right and privilege of using the tracks of the Western & Atlantic Railroad Company for the purpose of entering the city of Atlanta and for transporting passengers to the Union Depot in said city, the said agreement expressly providing that said Seaboard Air Line Belt Railroad Company should have said right and privilege of using the said tracks for the passenger trains of the Georgia, Carolina & Northern Railway Company, said agreement using the following language:

" 'The true intent and meaning of this provision being to give to said Seaboard Air Line Belt Railroad Company, party of the second part, the right to use said railroad tracks and depot building for the passenger trains of the Georgia, Carolina & Northern Railway, upon the same terms and conditions and upon the same rentals as those prescribed for and paid by the Georgia Pacific Railway Company for similar privileges,' etc.

"Said agreement further provides as follows:

" 'And the said Nashville, Chattanooga & St. Louis Railway, lessee as aforesaid, further covenants and agrees to store and clean the passenger engines and coaches of the said Seaboard Air Line Belt Railroad Company and those used by it belonging to the Georgia, Carolina & Northern Railway, while laying over at Atlanta, at the rate of $1.00 per each engine or coach so stored and cleaned and to charge actual cost for switching. hostling, repairs,· supplies, fuel or water furnished to said engines or coaches.'

"The said agreement was entered into between the said Seaboard Air Line Belt Railroad Company and said defendant on the day aforesaid, and the same was executed under the seal of both corporations, and orators hereby aver that in the body of the said instrument it is recited that the same is under seal, a copy of which said agreement is hereto attached, marked 'Exhibit A,' and made a part of this bill and paragraph as though same were herein fully incorporated. Reference to the same is hereby prayed as often as may be necessary, which said agreements orators are ready to produce as this court shall direct.

"Orators are informed and believe, and so charge, that said Seaboard Air Line Belt Railroad Company made and entered into the contract hereinbefore set out primarily for its own use and benefit, but also for the benefit of the associated lines of railway with which the said Seaboard Air Line Belt Railroad Company connected at or near the station known as Belt Junction; that the trains which came into the custody of the said Seaboard Air Line Belt Railroad Company and which were operated over the lines of railway owned and controlled and operated by the said Seaboard Air Line Belt Railroad Company were trains which were received from the Georgia, Carolina & Northern Railway Company, or some one or other of the separate corporate entities composing the Seaboard Air Line Railway system prior to the consolidation, and your orators charge that said contract was made for· the benefit of said various corporations, as well as for the benefit and advantage of the Seaboard Air Line Belt Railroad Company, the last of said connecting carriers.

"Orators charge that at the time they took charge of said Seaboard Air Line Railway, as receivers thereof, among the choses in action belonging to and being a part of said trust estate was a certain indebtedness arising by reason of the breach of the said contract entered into by and between the Seaboard Air Line Belt Railroad Company and the defendant to this dependent and ancillary bill. Orators show that the title to said chose in action arising by reason of the breach of said contract is in your orators, as receivers of the Seaboard Air Line Railway, and that said Seaboard Air Line Railway acquired said chose in action as successor in title to said Seaboard Air Line Belt Railroad Company under and by virtue of said article 10 of said agreement of merger and consolidation hereinbefore set out. Your orators charge that said indebtedness· was and is an open account, and is for the principal sum of six thousand eight hundred and eighty and $07/100$ ($6,880.-07) dollars, besides interest thereon at the legal rate from July 14, 1896.

Said indebtedness due said Seaboard Air Line Railway, as successors in title to the Seaboard Air Line Belt Railroad Company, arose by reason of the following facts:

"On or about the 14th day of July, 1896, your orators are advised and believe, and so charge, the Seaboard Air Line Belt Railroad Company did receive from the Georgia, Carolina & Northern Railway Company a certain train of cars, and did proceed to carry the same from the junction point with said Georgia, Carolina & Northern Railway Company at or near Belt Junction, to said Howell Station upon the line of the Western & Atlantic Railroad Company, and from thence to the Union Depot in the city of Atlanta, over the lines of the said defendant railroad company.

"Orators show that said train consisted of a locomotive and several cars, among which was a certain sleeping car of the type commonly known as a 'Pullman car,' the name of which was 'Emison'; all of said cars being in the possession of the said Seaboard Air Line Belt Railroad Company and forming a part of the train operated over it by its said line of railway, as aforesaid, on said day.

"Orators show that the general property in the said car 'Emison' was in the Pullman Company, a corporation, as the legal owner thereof; but orators charge that a special property and the right of possession in and to the said car was in the said Seaboard Air Line Belt Railroad Company, the bailee thereof.

"Orators further charge that on said day said Seaboard Air Line Belt Railroad Company did carry said train of cars to the Union Passenger Station in the city of Atlanta, at which point, under and by virtue of the agreement hereinbefore set out, the defendant took possession of said train, including the said car Emison, for the purpose of hostling the same and removing said cars to a point where the same might be cleaned and stored, all of which was done in accordance with the said agreement. But orators show that, on said day the moving of said cars was not done by the defendant in a skillful and workmanlike manner, not in the manner as was contemplated in the said agreement, but that said defendant company carelessly and negligently permitted one of its trains, to wit, a gravel train, to come upon the track wherein said train and the said car 'Emison' were being hostled, and negligently and carelessly permitted the said two trains to come into collision, to the damage of both trains and especially to the damage of the said car 'Emison'; said car 'Emison' and contents being damaged to the extent of $6,880.07. An itemized list setting forth the damage inflicted upon the said car 'Emison' is hereto attached and marked 'Exhibit B' and made a part of this bill and paragraph as though the same were herein incorporated; reference to the same being hereby prayed as often as may be necessary, which said items of damage your orators aver their willingness to prove and verify.

"Orators show that, under and by virtue of said agreement, said defendant company should have hostled and removed the said cars and the said car 'Emison' from the Union Depot in a skillful and safe manner; that said defendant company did breach the said contract, as hereinbefore set out; that by reason of the said breach the said Seaboard Air Line Belt Railroad Company was and is damaged in the sum of $6,880.07; that under and by virtue of the said articles of agreement of merger and consolidation said indebtedness due to the said Seaboard Air Line Belt Railroad Company by the said defendant company has passed into and become the property of the Seaboard Air Line Railway, of which corporation your orators are receivers. Your orators further show that, under and by virtue of the order appointing them receivers, as aforesaid, the right to sue for the breach of the said contract is now in them as such receivers.

"Orators further show that said indebtedness is true, just, and unpaid; that demand has often been made upon the said defendant for payment thereof; but that said defendant company has hitherto refused to pay said debt, or any part thereof—all to the damage of your orators as receivers in the sum hereinbefore set out.

"Orators show that this bill against said Nashville, Chattanooga & St. Louis Railway, lessee as aforesaid, and a body corporate and politic, under

and by virtue of the laws of this state, under the name and style of Western & Atlantic Railroad Company, is dependent and ancillary in nature and character to the cause in which they were appointed receivers, as aforesaid; this honorable court having taken jurisdiction of all the property, real and personal, of the Seaboard Air Line Railway situate in the Northern district of Georgia, and the same now being in its custody, and said indebtedness in favor of your orators being a part of the estate now in the custody of this honorable court."

Then follows a prayer for a decree for $6,880.07 with interest from April 14, 1896, at the legal rate and for such other and further relief as the exigencies of the case may require.

To this bill a demurrer upon several grounds has been filed, as follows:

First. That the case is improperly brought on the equity side of the court.

Second. That the case is barred by the statute of limitation, in that it is brought to recover of the defendant the cost of alleged damages to the car "Emison" and its contents, while in the possession of the Seaboard Air Line Belt Railroad Company, as bailee thereof, suit to recover such damages should have been brought within four years from the time such damages were sustained, and it appears from the allegations of said bill that such damages were sustained at a time long anterior to four years before the filing of said bill.

Third. That plaintiffs are guilty of gross laches in waiting 13 years to institute any proceeding which should prevent a recovery in a court of equity.

Fourth. That whatever right of action the Seaboard Air Line Belt Railroad Company may have had did not pass under the agreement set out in the bill to the consolidated and merged corporation because the cause of action was barred before the agreement of consolidation and merger was entered into.

Fifth. That it does not appear from the contract between the Seaboard Air Line Belt Railway Company and the defendant that it undertook thereby or assumed any obligation not to injure or damage a car or its contents not belonging to the said Seaboard Air Line Belt Railroad Company or the Georgia, Carolina & Northern Railway Company; but, on the contrary, any liability for such damage caused by the defendant was and is as for a tort, and not as and for a breach of the contract.

Sixth. That it does not appear from the contract that the defendant undertook and agreed to hostle and remove the cars of the Seaboard Air Line Belt Railroad Company or the Georgia, Carolina & Northern Railway Company; but that it undertook "to charge actual cost for switching, hostling, repairs, supplies, fuel, or water furnished to the said engines or coaches."

Seventh. Because of the manner in which the items of damage are set out in the bill.

This is a mere synopsis of the demurrer, which is lengthy and states other grounds, which it is unnecessary to refer to here.

An interesting question arises in this case as to whether this is the contract of the Western & Atlantic Railroad Company. In 1889 the

Western & Atlantic Railroad was leased by the state of Georgia, by virtue of an act of the Legislature, to the Nashville, Chattanooga & St. Louis Railway Company. The lease act provided as follows:

"And as soon as the terms of the lease are agreed upon between the Governor and the lessee or lessees, and the name or names of the company, or corporation, or parties leasing the road and its appurtenances, has been entered on the minutes of the Executive Department as the persons or corporations proposing to take said lease, and the acceptance of the proposition by the Governor shall also have been recorded, and a receipt given to the state by the lessees under this act for all the property turned over to them, the persons, associations or corporations accepted as lessees under this act, if not already a corporation created under the laws of Georgia, shall, from the time of such acceptance, and, until after the final adjustment of all matters springing out of this lease contract, become a body politic and corporate under the laws of this state, under the name and style of the Western & Atlantic Railroad Company, which body corporate shall be operated only from the time of their taking possession of said road as lessees; and it shall have the power to sue and be sued, on all contracts made by said company, in any county through which the road runs, after the execution of said lease, or for any cause of action which may accrue to said company, and to which it may become liable."

The contract, which is set out here as an exhibit and as a basis for the suit, was made on the 1st day of October, 1892, between the Nashville, Chattanooga & St. Louis Railway, lessee of the Western & Atlantic Railroad Company, of the first part, and the Seaboard Air Line Belt Railroad Company, a corporation duly incorporated and existing under the laws of the state of Georgia, of the second part. It is signed, "Nashville, Chattanooga & St. Louis Railway, by J. W. Thomas, President," with the seal of the Nashville, Chattanooga & St. Louis Railway attached.

This contract contains the agreement set out heretofore as a part of complainant's bill as to storing and cleaning the engines and coaches of the Seaboard Air Line Belt Railroad Company and those used by it belonging to the Georgia, Carolina & Northern Railway, while laying over at Atlanta.

The question is: In view of the provision in the lease act that the lessee shall become a Georgia corporation under the name and style of the Western & Atlantic Railroad Company, whether this is a valid and binding contract of that corporation, and particularly whether the seal of the Nashville, Chattanooga & St. Louis Railway being attached to it would make it a sealed instrument on behalf of the Western & Atlantic Railroad Company, the corporation created by the lease act.

I do not think it necessary to pass upon this question, however, because the case is controlled otherwise.

It will be perceived that the agreement on the part of the defendant company, if it was its agreement, was to store and clean the passenger engines and coaches of the Seaboard Air Line Belt Railroad Company and those used by it belonging to the Georgia, Carolina & Northern Railway Company, while laying over at Atlanta, etc.

Certainly, where the right to sue 13 years after the wrong was done is claimed, basing such right to sue, after that long period had elapsed, upon an agreement as a sealed instrument, it should at least be reasonably clear from the terms of the instrument that the contract to

store and clean embraced Pullman cars which were being used by the corporation with which the contract was made. It is true that the language of the agreement as to charging actual cost for "switching," "hostling," etc., would make the switching and hostling of whatever cars were embraced in the contract a part of the agreement; that is, it would make the agreement to switch and hostle a part of the agreement to store and clean, as would seem to be necessarily true in connection with the duty undertaken. It is extremely doubtful, therefore, whether any duty arose on the part of the Western & Atlantic Railroad Company as to storing and cleaning, or as to hostling and switching Pullman cars. But, on the contrary, if the Western & Atlantic Railroad Company did undertake to hostle and switch the Pullman cars brought into Atlanta by the Seaboard Air Line Belt Railroad Company, it would seem to be a service performed outside of and independently of the terms of the contract. It is conceded that this suit can only be maintained, and necessarily so, by bringing it under the agreement made in 1892, as otherwise it would be clearly barred by the statute of limitation.

It is alleged in the bill, as will have been seen from the quotations above, that the Pullman car "Emison," to which it is alleged the damage was done, was in a train of cars being moved by the defendant company from the Union Passenger Station in Atlanta for the purpose of hostling the same and removing it to a point where the same might be cleaned and stored. It is further alleged, as will be seen, that the general property in the Pullman car was in the Pullman Company and special property in the Seaboard Air Line Belt Railroad Company, by reason of its being bailee of the same.

Conceding this to be true, I do not see how that could affect the terms of the agreement, which does not embrace, expressly or by implication, cars belonging to the Pullman Company, although brought to Atlanta by trains of the Georgia, Carolina & Northern Railway Company. The hostling and switching, it will be seen, was a mere incident (though probably a necessary one) to the storing and cleaning. For the storing and cleaning definite charges are made of $1 for each engine or coach stored and cleaned, but only the actual cost of switching, hostling, etc., is provided for. The right of action here cannot be based on any covenant contained in the paper which is made the basis of the suit. Any right which may have existed could have been enforced only by suit in tort for damage done by the defendant to the Pullman car, or, it may be, on an implied agreement, as it undertook to handle the car, to do so safely and properly. Either action would have been barred years before the institution of this proceeding.

It will be seen from the bill of particulars attached to complainants' bill as to the items of damage to the Pullman car, such, for example, as cleaning and repairing or renewing blankets, berth curtains, drapery, hammocks, mattresses, and mattress covers, and the items of coffee, cigars, whisky, and beer, and many other similar and perhaps more expensive articles enumerated, the loss of which is claimed, how much greater the responsibility for hostling and switching a Pullman

car would be than for an ordinary passenger coach, and how much greater damage would result from an accident to the Pullman car. So it would seem, in dealing with this matter of switching and hostling, if they had intended to embrace Pullman cars in this agreement, it would have said so in express terms.

It is unnecessary to decide the question raised by the demurrer as to whether this suit, as ancillary to the main receivership proceeding, was properly brought on the equity side of the court, because the proceeding would be barred either at law or in equity.

For the reasons given, the demurrer to the bill must be sustained, and it will be so ordered.